IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD WATERS, | : | CIVIL NO. 1:04-CV-2497 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| F.W. TENNIS, ET AL., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Richard Waters, a Commonwealth of Pennsylvania inmate formerly incarcerated at the State Correctional Institution at Rockview ("SCI-Rockview"), Bellefonte, Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants, past and present employees of the Pennsylvania Department of Corrections ("DOC") at SCI-Rockview, failed to protect him from an assault by a fellow prisoner. He is proceeding *via* an amended complaint. (Doc. No. 47). Defendants' moved for summary judgment on February 2, 2007, and the motion is ripe for disposition. (Doc. No. 121.) For the reasons discussed below, the motion will be granted.

I.      STATEMENT OF FACTS

In January 2004, as a result of an argument with a Corrections Officer, Plaintiff was placed in the Restricted Housing Unit ("RHU"). ( Doc. No. 123, Richard Waters Dep. 17:17-20.) On January 21, 2004, inmate Nelson Dealmeida ("Dealmeida") was placed in the RHU cell with Plaintiff. (Official Inmate Grievance, Doc. No. 123, at 21.)  Neither inmate had a "Z-code" requiring single cell placement. (Initial Grievance Review Response, Doc. No. 123, at 22.) Plaintiff did not know Dealmeida prior to being housed with him and, up until January 30, 2004, he got along with his new cellmate and had no complaints regarding the arrangement. (Waters

Dep. 19:22-25, 20:1-7.) However, on the morning of January 30, 2004, Plaintiff contends that Dealmeida told the Corrections Officer and Nurse on duty that he was hearing voices and that his medication was not working. (Doc. No. 47, at 3 ¶ 13.) At approximately noon on that same day, Plaintiff was assaulted by Dealmeida. Plaintiff described the incident as follows:

> I had got in my bed and went to sleep to be awoken by being beat by Mr. Dealmeida. I was knocked to the floor and continuously punched and kicked. And I called out for help. Had it not been for the CO coming to pick up or retrieve the lunch trays, you know, it may have been worse than it turned out to be.

(Waters Dep. 13:11-19.)

Prior to this incident, Dealmeida did not demonstrate bizarre or aggressive behavior. (Waters Dep. 27:1-5.) Nor did he have any history of violence toward a cellmate until the incident with Plaintiff. (Initial Grievance Review Response, Doc. No. 123, at 22; Appeal to Grievance Response, Doc. No. 123, at 24.) It is Plaintiff's position that Dealmeida should not have been placed in the same cell as him. In support of this argument, he states that it is documented in institutional records that Dealmeida, who was housed in the Mental Health Unit in the past, is a threat to the security of the institution. (Doc. No. 126, at 3.)

Plaintiff names Defendant Tennis is his capacity as the "head of the institution." (Waters Dep. 50:22-25, 51:1-22). Plaintiff, however, concedes that he has no evidence to suggest that Tennis was personally involved in the decision to cell Dealmeida and Plaintiff together. (Waters Dep. 51).

Plaintiff seeks to impose liability on Lieutenants Walker, Goodman, and Craig and Sergeant Grassmyer because they were employed in the RHU. These Defendants were not involved in the decision to house Waters and Dealmeida together. (Declaration of Dale E.

2

Walker ("Walker Dec."), Doc. No. 123, at 32 ¶ 3; Declaration of Kenneth Goodman ("Goodman Dec."), Doc. No. 123, at 34 ¶ 2; Declaration of John Craig ("Craig Dec."), Doc. No. 123, at 42 ¶ 2); Declaration of Robert E. Grassmyer ("Grassmyer Dec."), Doc. No. 123, at 36 ¶ 3.)  Walker and Grassmyer were assigned to the RHU day at issue.  However, they were not working at the time of the assault.  (Walker Dec. at 32 ¶ 4; Grassmyer Dec. at 36 ¶ 4.)  Goodman and Craig were not assigned to work in the RHU in January 2004 and have no firsthand information concerning the assault.  (Goodman Dec. ¶ 3; Craig Dec. ¶ 2).

Plaintiff also claims Registered Nurse Hartman failed to protect him when, after Dealmeida refused his medications, Hartman did not take steps to remove Dealmeida from the cell.  Hartman worked the 2:00 p.m. to 10:00 p.m. shift on that day, and delivered evening medications.  (Declaration of Gerald Hartman, Doc. No. 123, ¶¶ 4-7 ("Hartman Dec.")).  He notes that Dealmeida was not prescribed morning medication; he only took evening medications.  (Id. at ¶ 7.)  He also "reviewed the medical records and confirmed that Mr. Dealmeida did not refuse his medication on January 29, 2004 or January 30, 2004."  (Id. at ¶ 8.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986).  A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson, 477 U.S. at 248.  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder

to return a verdict for the nonmoving party.  Id. at 249; Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Anderson, 477 U.S. at 251-52.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id.  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

With respect to the sufficiency of the nonmoving party's evidence, a court should not grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III.     DISCUSSION**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983.  The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under color of state law."  Kneipp, 95 F.3d at 1204  (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Although the Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, Helling v. McKinney, 509 U.S. 25, 32, (1993), it does not mandate that prisons be free of discomfort.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  "No static test determines whether conditions of confinement are 'cruel and unusual.'  These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'"  Tillery v. Owens, 719 F. Supp. 1256, 1262 (W.D. Pa. 1989) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).  To violate the Eighth Amendment, conditions of confinement must be dangerous, intolerable, or shockingly substandard.  See Riley v. Jeffes, 777

F.2d 143, 147 (3d Cir. 1985); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 757 (3d Cir. 1979). Clearly, "[b]eing violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Rhodes, 452 U.S. at 347).

To sustain an Eighth Amendment claim, the inmate must also show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Specifically, an inmate must prove that the defendant demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. Farmer, 511 U.S. at 835-37; see Ostrander v. Horn, 145 F. Supp. 2d 614, 620 (M.D. Pa. 2001), aff'd, 49 F. App'x 391 (3d Cir. 2002). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See id. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 834, and that prison officials knew of and disregarded the excessive risk to inmate safety. Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether . . . prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways,

including inference from circumstantial evidence . . . and a factfinder may conclude that . . . prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Each defendant must have been personally involved in the events or occurrences which underlie a claim. Id.; see Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003); see also Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08.

Plaintiff alleges that Superintendent Tennis, as the "head of the institution," failed to protect him from the assault. (Waters Dep. 50:22-25, 51:1-22). It is well established that claims brought under § 1983 cannot be premised on a theory of *respondeat superior*. Id. Rather, each named defendant must be shown, *via* the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). There is no question that Plaintiff seeks to impose liability on Tennis based on his supervisory role and offers no evidence of participation, actual knowledge or acquiescence on Tennis's part. Consequently, Defendants' motion for summary judgment will be granted as to Tennis.

Plaintiff fares no better with respect to Lieutenants Walker, Goodman, and Craig or Sergeant Grassmyer. These Defendants assert they were not involved in the decision to place

Dealmeida in the cell with Plaintiff, and Plaintiff offers no evidence disputing this fact.  With respect to Plaintiff's position that Defendants failed to take the necessary steps to remove Dealmeida from the cell based on his refusal to take his medication, although Walker and Grassmyer were assigned to the RHU on the relevant date, they were not working at the time the assault took place. (Walker Dec. at 3 ¶ 4; Grassmyer Dec. at 36 ¶ 4.)  Goodman and Craig were not assigned to work in the RHU in January 2004, and have no firsthand information concerning the assault.  (Goodman Dec. ¶ 3, Craig Dec. ¶ 2.)

Moreover, Plaintiff fails to establish that he was incarcerated under conditions posing a substantial risk of harm.  Although he claims that it is documented in institutional records that Dealmeida is a security threat to the institution, he does not produce any such documentation.  Further, Plaintiff concedes that, prior to the assault, there were no problems with Dealmeida and Dealmeida did not display aggressive, violent or bizarre behavior such that anyone could have anticipated that there was a risk that Dealmeida would assault Plaintiff.  All indications are that this was a single, isolated incident.  A party opposing a motion for summary judgment must adduce more than a scintilla of evidence in its favor, and cannot simply reassert the unsupported allegations contained in its pleadings.  See Celotex, 477 U.S. at 325; Anderson, 477 U.S. at 251-52.  Plaintiff has failed to meet his burden.  Defendants' motion will be granted with respect to Lieutenants Walker, Goodman, and Craig and Sergeant Grassmyer.

The only remaining defendant is Registered Nurse Hartman.  There is no indication that he was personally involved in any unconstitutional conduct.  As a registered nurse, clearly he had no involvement in the decision to house Dealmeida and Plaintiff together.  Additionally, he was not working in the RHU at the time and, therefore, was not present when morning medications

were distributed. Moreover, despite Plaintiff's contention to the contrary, Dealmeida did not receive medications in the morning and there is no record that he refused any medication on January 29, 2004 or January 30, 2004. Defendant Hartman is also entitled to the entry of summary judgment in his favor.

## IV.   CONCLUSION

Based on the foregoing discussion, Defendants' motion for summary judgment (Doc. No. 121) will be granted. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**RICHARD WATERS,**               :     **CIVIL NO. 1:04-CV-2497**
       **Plaintiff,**    :
                         :     **(Chief Judge Kane)**
  **v.**                         :
                         :
**F.W. TENNIS, ET AL.,**          :
       **Defendants**   :

## ORDER

**AND NOW**, this 28th day of September, 2007, **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment (Doc. No. 121) is **GRANTED**.

2. The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

3. Plaintiff's motion for appointment of counsel (Doc. No. 127) is **DENIED**.

4. The Clerk of Court is further directed to **CLOSE** the case file.

5. Any appeal from this order is **DEEMED** frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                            ____s/ Yvette Kane_____
                                            Yvette Kane, Chief Judge
                                            United States District Court
                                            Middle District of Pennsylvania